PECK v. WEBB.

DEEDS—CONSTRUCTION—BOUNDARIES.

Plaintiff and defendant purchased a parcel of land bounded on the east by a meandered lake, and containing some 62 acres within the meanders; title being taken in the name of plaintiff. Thereafter plaintiff quitclaimed an undivided one-half of the land to defendant, the deed reciting that it was understood that the parties should, by subsequent conveyance, divide the property equally, plaintiff to have the south half and defendant the north half. Plaintiff afterwards conveyed to defendant the north 31 acres, and defendant conveyed to plaintiff the entire parcel "lying south of the north 31 acres;" each deed reciting that it was made to carry out the agreement specified in the quitclaim. *Held,* that, in determining the south boundary of the 31 acres, the land should be measured to the meander line only, and not to the water's edge, thereby effectuating the expressed intention of the parties to divide the land equally.

Error to Muskegon; Russell, J. Submitted December 10, 1901. Decided January 28, 1902.

Ejectment by William Peck and Jennie Peck against Nathan H. Webb and Belle C. Webb. From a judgment for defendants on verdict directed by the court, plaintiffs bring error. Affirmed.

*Arthur Jones*, for appellants.

*Sessions & Sutherland* (*W. E. Osmun*, of counsel), for appellees.

HOOKER, C. J.   White Lake encroaches upon the E. ½ of section 29, township 12 N., range 17 W., and said half section was platted by the government into four lots; lot No. 3 being bounded .on the north and west by the quarter lines, and on the east by the lake. Its acreage is given at 64.40 in the plat. Peck and Webb undertook to obtain a title to lot 3, and are supposed to have done so, by buying various outstanding tax and other claims, except as to one or two small parcels, which are not in dis- pute. These conveyances ran to Peck, and on December. 14, 1897, he made a quitclaim deed to Webb of "the un- divided one-half of lot 3, section 29, town 12 north, range 17 west, excepting the block George Heald, and lands sold Newell, Avery & Co. on the south side,—in all about 64 acres, more or less." The following is a provision of such deed:

"It is understood and agreed that the said parties shall divide said property equally; the said William Peck to have the south half in fee, and the said Nathan H. Webb to have the north half; said division to be made by volun- tary conveyance to be hereafter executed."

The excepted parcels aggregate 2.46 acres. After this deed was made, a deed to the entire lot was obtained by the parties from the holder of the original title.

This land had been platted into village lots, and the parties, after acquiring title, obtained a decree vacating this plat, and then undertook to divide the land, each deeding to the other. Peck deeded to Webb "the north 31 acres of lot No. 3 in section No. 29 of township No. 12 north, of range No. 17 west." Webb deeded to Peck "all of lot 3 in section No. 29 of township No. 12 north, of range No. 17 west, lying south of the north 31 acres, excepting the George Heald block, and lands sold to Newell, Avery & Co." Each deed contained the following: "This deed is

made, executed, and delivered to carry out the agreement specified in a deed bearing date December 14th, 1897, and recorded in Liber 96 of deeds, on page 397, in the office of the register of deeds of the county of Muskegon, Michigan,"—referring to the deed hereinbefore mentioned.

White Lake is an expansion of White river, and contiguous proprietors owned to the center of the lake. This lot was meandered, and, as stated, was shown by the government survey to contain 64.40 acres. The plaintiff has brought ejectment for a strip of land along the boundary between the parcels of himself and Webb, and the case turns on the true boundary. As we understand the case, plaintiff contends that Webb owns the north 31 acres, and that he owns the remainder, be the same more or less. To determine the south boundary of the 31 acres, he asks that the land shall be measured to the water's edge, while the defendant maintains that such a measurement would not give him one-half of the land, as the parties intended, as shown by the earlier deed.

We think he is right in this contention. The circumstances under which this land was obtained and divided show that the conveyance was made with reference to the land inside of the meander lines. It is true, as a legal proposition, that, in buying lot 3, they acquired title not only to the water's edge, but to the middle of the lake; but there is no pretense that the deed to Webb of 31 acres should be interpreted to mean the north 31 acres on the basis of a measurement to the center of the lake. What did it mean, then? There is no more reason for saying that it extended to the shore than to the center of the lake. The earlier deed shows the nature of the transaction. The parties undertook to divide a parcel of land amounting to 62 acres, as near as may be, which is just what they had within the meanders. We cannot see how the learned circuit judge could have reached a different conclusion, and his judgment is affirmed.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., took no part in the decision.